**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ERIK FRY

        Plaintiff,        CIVIL ACTION NO. 06-CV-13867-DT

  vs.                             DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF           MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION**

This Court recommends that Defendant's Motion for Summary Judgment be **GRANTED** (Docket #15), that Plaintiff's Motion for Summary Judgment be **DENIED** (Docket #11), and that Plaintiff's complaint be **DISMISSED**.

**II.**   **PROCEDURAL HISTORY**

Plaintiff Erik Fry filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on May 14, 2003. (Tr. 46). He alleged he had been disabled since December 1, 2001 due to back problems, asthma, learning problems, and a history of alcohol abuse. (Tr. 21). Plaintiff's application was denied on November 6, 2003. (Tr. 21-25). A hearing was held on October 19, 2005 before Administrative Law Judge ("ALJ") Bernard A. Trembly who subsequently denied Plaintiff's claims in an opinion issued on January 24, 2006. (Tr. 10-19). The Appeals Council declined to review the decision of the ALJ and the ALJ's decision is now the final decision of the Commissioner. Plaintiff appealed to this Court and the parties have filed motions for summary judgment.

**III.**  **MEDICAL EVIDENCE**

1

Plaintiff injured his back on October 30, 1996 when he attempted to lift two 50-pound buckets of bolts. (Tr. 94). X-rays of Plaintiff's lumbar spine showed an acute herniated nucleus pulposus of L4-L5 on the right, concomitant degenerative disc disease at L4-L5 and L5-S1, and retrolisthesis of L3-L4. Plaintiff was prescribed a Medrol Dosepak and Flexeril. *Id.* He was released back to work with a restriction that he not lift more than 15 pounds. (Tr. 97).

On November 15, 2002 Plaintiff complained of shortness of breath and pressure in his chest. (Tr. 221). Dr. Mohamedally diagnosed Plaintiff with asthmatic bronchitis and he prescribed medications. *Id.* On May 8, 2003 Plaintiff complained of upper respiratory problems and continuing back pain. (Tr. 216).

Plaintiff underwent an MRI of the lumbar spine on May 17, 2003. (Tr. 123-24). The results showed degenerative changes at L2-L3, right lateral disc herniation at L3-L4 with diffuse disc bulging, a mild disc bulge to the right at L4-L5, and a small left lateral disc herniation with no canal stenosis but with left neural foraminal narrowing at L5-S1. (Tr. 123).

Plaintiff underwent EMG and nerve conduction studies of the lower extremities on June 10, 2003. (Tr. 125). The results revealed L3-L4 radiculopathy on the right and L4-5 root irritation without denervation. There was no evidence of lumbrosacral plexopathy or peripheral neuropathy of the lower extremities. *Id.* The physician noted that Plaintiff's lower extremity reflexes were normal. *Id.*

Dr. M. Zaroff performed a psychological evaluation of Plaintiff on June 27, 2003. (Tr. 135). Plaintiff stated that he occasionally drove and that he enjoyed hunting in the past. *Id.* However, Plaintiff was currently under a court order not to hunt because he could not

possess a firearm. (Tr. 136). Plaintiff also stated that he helped his wife with chores and played video games. (Tr. 137).

Dr. V. Palavali, a neurosurgeon, examined Plaintiff on August 12, 2003 at Dr. Mohamedally's request. (Tr. 161). Plaintiff complained of back and leg pain for which he took Motrin. *Id.* The lower extremity examination was limited because Plaintiff stated he could not raise his legs to 10 degrees. However, Dr. Palavali noted that Plaintiff had 4+/5 strength. (Tr. 162). Reflexes were diffusely decreased but sensation was intact. *Id.* Plaintiff also had a normal gait. His lumbar motion was 10 degrees of flexion (90 is normal) and 5 degrees of extension (25 is normal). *Id.* Dr. Palavali stated that Plaintiff's limited range of motion was not consistent with his review of the MRI of the lumbar spine which showed only mild spondylosis at multiple levels. *Id.* The MRI did not clearly show significant compression of the right L5 nerve root. *Id.* Dr. Palavali concluded that Plaintiff had some mechanical back pain and myofascial pain. *Id.* He did not believe that Plaintiff's condition warranted surgery. *Id.*

Dr. L. Hendricks examined Plaintiff on October 13, 2003 at the request of the state agency because of alleged back problems and asthma. (Tr. 164). Plaintiff stated that he smoked a package of cigarettes every other day and that he took Motrin for back pain. *Id.* Plaintiff complained of a history of asthma and stated that he had recently experienced shortness of breath with activity and nighttime wheeziness. (Tr. 165). However, Plaintiff had never experienced a severe asthma attack. Plaintiff also stated that he had previously used an inhaler but he had run out of medication.

Upon examination, Dr. Hendricks observed that Plaintiff walked with a mild limp and that he could tandem walk and toe walk. However, Plaintiff could not heel walk and he had to push on a table to arise from the squatting position. Plaintiff did not require an

assistive device to walk. (Tr. 165, 169-70). Cervical spine motion was normal and lumbar spine motion was 30 degrees of flexion, 15 degrees of extension, and 20 degrees of bilateral flexion (25 is normal). (Tr. 167). Bilateral hip motion was normal but for 30 degrees of abduction (40 is normal) and 60 degrees of forward flexion (100 is normal). (Tr. 168). Knee flexion was 90 degrees on the right and 120 degrees on the left (150 is normal) and bilateral ankle motion was normal. *Id.* Bilateral straight-leg raising was 30 degrees (90 is normal). (Tr. 165, 170). There was no weakness at the ankles but right ankle deep tendon reflexes were absent. (Tr. 165, 169). There was no muscle atrophy in Plaintiff's lower extremities. (Tr. 165). Plaintiff had decreased sensation in the right foot along the L3-L4 and L5-S1 distribution. *Id.* Dr. Hendricks found that Plaintiff could not: (1) stand for more than 30 minutes; (2) bend, stoop, carry, push, or pull; or (3) squat or arise from a squat. (Tr. 169).

A state agency physician reviewed Plaintiff's medical record on November 4, 2003 and completed a Physical Residual Functional Capacity ("RFC") assessment form. (Tr. 172-80). The physician concluded that, based upon Dr. Hendricks' examination, Plaintiff could: (1) lift/carry 20 pounds occasionally and 10 pounds frequently; (2) stand/walk for 2 hours in an 8-hour workday; (3) sit 6 hours in an 8-hour workday; and (4) occasionally use foot controls on the right. (Tr. 173-74). The physician also noted that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl based upon Plaintiff's May 2003 MRI. (Tr. 174). The physician further found, without citation to specific evidence, that Plaintiff should avoid concentrated exposure to extreme cold and heat, humidity, fumes, odors, dust, gases, and hazards such as machinery and heights. (Tr. 176).

On October 17, 2004 Dr. Mohamedally completed a questionnaire entitled "Medical Assessment of Ability to do Work Related Activities (Physical)". (Tr. 267). Dr. Mohamedally opined that Plaintiff could occasionally lift/carry up to 10 pounds one hour a

4

day with a maximum of one-third of an 8-hour day. *Id.* Plaintiff could stand/walk for one hour and sit for one hour. *Id.* Plaintiff could never climb, balance, stoop, crouch, or kneel but he could occasionally crawl. (Tr. 268). Plaintiff's ability to feel and to push and pull was limited and he should have only limited exposure to heights and moving machinery. *Id.* On October 19, 2004 Dr. Mohamedally completed another questionnaire about Plaintiff's condition. (Tr. 265). Dr. Mohamedally indicated that he had treated Plaintiff since September 1990 and that Plaintiff was unable to work. *Id.*

## IV. PLAINTIFF'S TESTIMONY

Plaintiff was 39 years old at the time of the ALJ's decision. (Tr. 46). He completed the tenth grade and had previously worked as an assembler. (Tr. 52-58, 81). Plaintiff testified that he was in a lot of pain and that he could not tolerate prolonged sitting, standing, or bending. (Tr. 291-293). He stated that the pain radiated down both legs. (Tr. 293, 295-296). Plaintiff treated his symptoms with Motrin. (Tr. 294). Plaintiff also testified that he had numbness and muscle spasms in his legs and toes. (Tr. 297). He stated that the numbness was also sometimes present in his back. (Tr. 97).

## V. LAW AND ANALYSIS

### A. STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Walters v. Commissioner,* 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo,* or resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.,* 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Commissioner,* 203 F.3d 388, 389-90 (6th Cir. 1999).

### B. **FRAMEWORK**

The Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff is required to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his RFC, age, education and past work experience to determine if he could perform other work.

If he could not, he would be deemed disabled. *Id.* § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her,* 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but 'only if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. ARGUMENTS

The ALJ determined that Plaintiff had the RFC to perform sedentary work that involved: (1) lifting/carrying 10 pounds; (2) sitting for 6 hours in an 8-hour workday; (3) standing/walking for 2 hours in an 8-hour workday; and (3) occasionally engaging in postural activities. (Tr. 17). The ALJ subsequently applied Rule 201.24 of the Medical-Vocational Guidelines (the "Grid") to conclude that Plaintiff was not disabled. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.24. (Tr. 18). The ALJ also noted that Plaintiff's capacity to perform a full range of sedentary work was not significantly compromised by his additional non-exertional limitations. (Tr. 19).

Plaintiff asserts that the ALJ's RFC finding is erroneous because he improperly ignored the state agency physician's findings that Plaintiff had environmental restrictions due to his asthma and had a limited ability to use his right, lower extremities to operate foot

7

controls. Plaintiff also asserts that the ALJ erroneously employed the Grid to find him not disabled.

### 1.     Environmental Limitations Due to Asthma

Plaintiff contends that the ALJ erred in failing to adopt the state agency physician's finding that Plaintiff's asthma necessitated certain environmental restrictions.[1] The ALJ noted that he generally agreed with the opinion of the state agency physician that Plaintiff had the RFC to perform a range of sedentary work. (Tr. 15). However, reading the ALJ's opinion as whole, it is clear that the ALJ found environmental restrictions were unwarranted given the lack of record evidence regarding Plaintiff's asthma.

The ALJ acknowledged that Plaintiff had a history of asthma. (Tr. 166). However, the mere diagnosis of an impairment neither renders an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual. *See McKenzie v. Commissioner of Social Security*, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988)). The ALJ noted that Plaintiff rarely complained of asthma and that the record (which spanned over 10 years) contained only two reported complaints of asthma-related symptoms. (Tr. 16, 17). The ALJ also commented that Plaintiff did not regularly take medication for asthma. (Tr. 17, 92). Furthermore, Plaintiff never suffered from a severe asthma attack requiring hospitalization or emergency room treatment. (Tr. 165). In fact, Plaintiff smoked one package of cigarettes every other day. (Tr. 164).

---

[1]     The state agency physician did not specify what medical evidence supported his recommendation for environmental restrictions. It is reasonable to assume that it was based upon Dr. Hendrick's references to asthma because it was the only relevant evidence discussed by the physician.

8

The Court also notes that Dr. Mohamedally, Plaintiff's treating physician, never indicated that Plaintiff's asthma resulted in any environmental limitations.[2] (Tr. 268). Dr. Mohamedally also did not opine that Plaintiff's asthma was even a disabling impairment. *Id.* Moreover, Plaintiff failed to testify to any effects attributable to his asthma. Indeed, Plaintiff noted in his disability applications and during the hearing that he had only stopped working due to his back pain even though Plaintiff worked in various assembly plants. (Tr. 52-58, 60-67, 76-77, 291). Given the minimal amount of evidence regarding Plaintiff's asthma and any of its functional effects, the Court cannot conclude that the ALJ's decision to reject the environmental restrictions recommended by the state agency physician lacked substantial support.

### 2.   **Plaintiff's Limited Ability to Operate Right Foot Controls**

Similarly, it is clear from the ALJ's opinion as a whole that he found that the record lacked objective, medical evidence to support a limitation regarding Plaintiff's ability to operate foot controls with his right foot. The ALJ acknowledged that Plaintiff had the severe impairments of degenerative disc disease and right-sided radiculopathy and that Plaintiff consequently experienced decreased sensation in the right lower extremity and abnormal reflexes in the right Achilles. (Tr. 14-17). However, the ALJ properly weighed this evidence against the other evidence of record and concluded that it did not necessitate limitations for the right lower extremity.

The ALJ pointed to findings which indicated that Plaintiff was not in acute distress and to a neurological examination showing 4+/5 strength of the lower

---

[2]   Dr. Mohamedally opined that Plaintiff's impairment did not necessitate restrictions against temperature extremes, chemicals, dust, fumes, humidity, or vibration.
(Tr. 268).

9

extremities. (Tr. 14). In addition, one examination showed sensation was intact and gait was normal.³ *Id.* Though on another occasion Plaintiff was found to have a mild limp, an inability to heel walk, and decreased sensation in the right lower extremity, the ALJ specifically noted that there was neither evidence of weakness in the lower extremities nor was there any muscle atrophy. (Tr. 15). Furthermore, MRI studies showed only mild spondylosis and there was no objective evidence of nerve root damage. (Tr. 14).

The ALJ observed that Plaintiff's primary complaint was back pain, for which the only adverse symptoms were tenderness, limitation of motion, and slowness getting up and down from the examination table. (Tr. 15). Though Plaintiff needed to hold onto the table to arise from a squat, he did not need an assistive device for ambulation. *Id.* The ALJ emphasized that treatment of Plaintiff's condition was conservative – he took only Motrin for pain and was not a candidate for surgery. (Tr. 14-16, 291-292). The ALJ also highlighted the fact that from November 13, 2003 to January 2004, the Plaintiff was not treated for back pain. (Tr. 16). When Plaintiff did see the physician in January 2004, he again exhibited only tenderness to palpation and reduced range of motion. *Id.*

The ALJ also noted that, but for a flare up in March 2004, the Plaintiff's symptoms were medically managed and there was no further mention of back pain until September 9, 2004 when Plaintiff saw Dr. Mohamedally, "to go over papers for [*sic*] lawyer." (Tr. 16). Though Plaintiff exhibited muscle spasms of the lumbosacral spine with reduced range of motion during this examination, no other clinical abnormalities were identified and he

---

³ The Court notes that these findings were made by Dr. Palavali, a neurosurgeon, who was asked to evaluate Plaintiff's back pain complaints by Dr. Mohamedally. Dr. Palavali concluded that Plaintiff's complaints were not consistent with the MRI evidence and that surgery was not warranted.

10

continued his medication. *Id.* Plaintiff's examination on March 3, 2005 was unchanged and the ALJ described progress notes through April 20, 2005 as unremarkable. (Tr. 17). In sum, there was no evidence of any resultant disabling effects caused by Plaintiff's underlying condition that would substantiate his alleged pain and limitations. (Tr. 17-19). *See* 20 C.F.R. §§ 404.1529(a)(b)(c), 416.929(a)(b)(c); Social Security Ruling ("SSR") 96-7p; *Jones v. Secr'y of Health & Human Servs.,* 945 F.2d 1365, 1369-1370 (6th Cir. 1991); *Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994).

### 3. Using the Grid Despite Findings of Postural Limitations

Plaintiff further argues that the ALJ improperly relied upon Grid Rule 201.24 to deny him benefits. Specifically, Plaintiff argues that the ALJ's inclusion of non-exertional postural limitations in his RFC finding precluded the ALJ's exclusive reliance on the Grid. Similarly, Plaintiff asserts that his limited ability to use his right foot to operate controls (an exertional limitation) and the environmental restrictions (non-exertional limitations) should have precluded the ALJ's exclusive reliance on the Grid.

An ALJ may rely exclusively on the Grids to support his step five finding that there are a significant number of jobs in the national economy that a claimant can perform in light of his or her age, education, work experience, and RFC. However, the Grids are not applicable if a claimant suffers from significant non-exertional impairments.[4] *Damron v. Sec'y of Health & Human Srvs.*, 778 F.2d 279, 282 (6th Cir. 1985). "A mere allegation of a non[-

---

[4] A non-exertional impairment is any impairment that does not directly affect the
ability to sit, stand, walk, lift, carry, push, or pull. SSR 83-10. Non-exertional impairments include impairments that affect mental, visual, auditory, and speech functioning. Thus, Plaintiff's limited ability to operate foot controls constitutes
an exertional limitation while the postural and environmental limitations are non-exertional in nature. *Id.*; *see also Cole,* 820 F.2d at 772.

11

]exertional limitation is not sufficient to preclude application of the [G]rid; the determining factor is whether the alleged non[-]exertional impairment is severe enough to alter the conclusion that the claimant could not do a full range of work." *Cole v. Sec'y of Health & Human Srvs.*, 820 F.2d 768, 772 (6th Cir. 1987).

The ALJ determined that Plaintiff's postural limitations did not significantly impact his ability to perform the full range of unskilled, sedentary work. Such a determination is supported by substantial evidence. Restrictions related to such activities as climbing, balancing, kneeling, crouching, or crawling, usually do not erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work. SSR 96-9p. Furthermore, "'some stooping . . . is required to do almost any kind of work . . .. If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact.' Thus, the limitations on claimant's ability to stoop do not preclude application of the grid." *Sickman v. Sec'y of Health & Human Servs.*, 1987 WL 44643, at *5 (6th Cir. 1987) (citing to SSR 85-15). Therefore, the ALJ reasonably determined that Plaintiff's capacity for the full range of sedentary work had not been significantly compromised by his additional non-exertional limitation.

As noted previously, the Court concludes that substantial evidence supports the ALJ's finding that environmental limitations and a limitation regarding Plaintiff's ability to operate foot controls were unwarranted. Consequently, Plaintiff's argument that these additional limitations precluded the ALJ's reliance on the Grid is moot. Even if the ALJ erred in this regard, however, Plaintiff's capacity for the full range of sedentary work would not have been significantly compromised by these limitations. Even the complete inability to use foot controls (whereas Plaintiff was allegedly limited to occasional use) does not

preclude the performance of sedentary work. *See Ealy v. Comm'r of Soc. Sec.*, 172 Fed. Appx. 88, 90 (6th Cir. 2006); *Hayes v. Sec'y of Health and Human Servs.*, 1991 WL 193455, *2 (6th Cir. 1991). Moreover, jobs involving the use of foot controls are considered to be in the light work category. SSR 83-10.

Similarly, environmental restrictions such as those suggested by the state agency physician would not have a significant impact on the unskilled, sedentary job base. SSR 96-9p ("[F]ew occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards . . .. Even a need to avoid all exposure to these conditions would not, by itself, result in significant erosion of the occupation base."). Based upon the foregoing, the Court concludes that the ALJ did not err in relying exclusively upon the Grid to find Plaintiff not disabled.

## VI. CONCLUSION

The Court recommends that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Motion for Summary Judgment be granted, and the instant complaint dismissed.

## VII. NOTICE TO THE PARTIES

Either party to this action may object to and seek review of this Report and Recommendation but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 6369(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.,* 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all ojects that party might have to this Report and

Recommendation. *Willis v. Sec'y of Health and Human Servs.,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 20, 2007         s/ Mona K. Majzoub
                             MONA K. MAJZOUB
                             UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 20, 2007         s/ Lisa C. Bartlett
                             Courtroom Deputy